■ RANDOLPH J. HUMBERT, Respondent, v. PROFIT SHARING COMMITTEE OF CARLISLE DECOPPET & Co., Also Known as CARLISLE & JACQUELIN Co., et al., Appellants.— In an action to recover amounts allegedly due under a profit-sharing plan, defendants appeal (by permission) from an order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated December 10, 1973, which affirmed a judgment of the Civil Court of the City of New York, Queens County, entered February 21, 1973, in favor of plaintiff, upon a jury verdict. Order affirmed, with costs. No opinion. Latham, Acting P. J., Benjamin, Munder and Shapiro, JJ., concur; Christ, J., dissents and votes to reverse the order of the Appellate Term and the judgment of the Civil Court and to dismiss the complaint, with the following memorandum: Plaintiff was employed by the stock brokerage firm of Carlisle DeCoppet & Co. (hereafter Carlisle). He and other employees of that firm contributed to a profit-sharing plan managed by defendant Profit Sharing Committee of Carlisle (hereafter Committee). The plan is written and is binding upon plaintiff and the Committee. As such, plaintiff's rights are contract rights and are limited by the provisions of that contract. Pertinent provisions of the plan are as follows: " Article VI * * * 4. If the service of a living Participant is terminated for any reason other than disability before he has completed five years of continuous service or on grounds of dishonesty (as determined by the Committee) at any time such Participant shall cease to be entitled to any interest in the Plan * * * Article VIII * * * 3. The Committee may construe this Plan and may determine all questions arising there-under. 4. Any action which the Committee is authorized or required to take under the provisions of this agreement shall be final and binding upon any Participant". There is no dispute concerning the underlying factual issues. Plaintiff was employed by defendant from August, 1957 until May, 1968 as a clerk, with hours from 5:00 P.M. until about 10:00 P.M. From 1963 to 1968 he was also employed by another firm during the day from approximately 9:30 A.M. until 5:00 or 5:30 P.M. His immediate supervisors were aware of the daytime job. On April 16, 1968, while working at his night job, he felt severe chest pains and left work. He went to Beekman Downtown Hospital, where he was treated and directed to return on April 24, 1968. He did not go to his nighttime work in late April and early May, 1968. He advised Carlisle that he was ill. In various letters plaintiff indicated that he was seriously ill and, although he was " bored staying at home", he did so under doctor's orders. Contrary to his statement that he was staying home, he continued to work at his daytime job while being recompensed by Carlisle. On a medical claim form he specifically checked a " No " answer to the question " Do you have

more than one employer?" On May 7, 1968 plaintiff was discharged by his department supervisor. At plaintiff's request, he met with the managing partner and another supervisor to review his dismissal. He then made claim to the Committee for the amount in his pension account, which totaled $6,732.45. By letter dated May 27, 1968, plaintiff was advised that the Committee refused to pay him his accrued pension benefits upon the ground that he had been dismissed for dishonesty and that his right to share in the fund was lost, as provided by the terms of the plan. He then instituted this action. It is undisputed that the Committee's determinations are final and binding upon the participants in the plan. Such determination as to plaintiff may not be upset unless he can show that it was motivated by bad faith or was arrived at by fraud or arbitrary action. Additionally, in this action the interpretation and construction of the plan are questions of law to be decided by the court and not by the jury (see *Gitelson* v. *Du Pont*, 17 N Y 2d 46). The record on appeal amply demonstrates that plaintiff deliberately deceived his employer into believing he was totally disabled and convalescing at home. Based upon this misrepresentation he received sick and disability pay although he continued to work at his daytime job. There is nothing to indicate bad faith, fraud or arbitrary action on the Committee's part. The jury's action was tantamount to a substitution of its judgment for that of the Committee, which is totally impermissible (see *Pasternack* v. *Diamond*, 3 A D 2d 422, affd. 5 N Y 2d 770). Accordingly, I would reverse the order of the Appellate Term and the judgment of the Civil Court and dismiss the complaint.